**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BRANDYWINE COMMUNICATIONS
TECHNOLOGIES, LLC,

          Plaintiff,

v.                                                          Case No. 6:11-cv-1843-Orl-36DAB

CISCO SYSTEMS, INC.,

          Defendant.

_____/

## <u>ORDER</u>

This cause comes before the Court upon Defendant Cisco Systems, Inc.'s ("Cisco" or

"Defendant") Motion to Transfer Case to the Northern District of California ("Motion to Transfer")

(Doc. 28), filed on February 3, 2012.  Plaintiff Brandywine Communications Technologies, LLC

("Brandywine" or "Plaintiff) filed its Response in opposition  (Doc. 35),  to which Cisco replied

(Doc. 40).  The Motion to Transfer is now ripe for review.  Upon due consideration of the

memoranda of counsel, accompanying exhibits, and the record, the Court will grant the Motion to

Transfer.

## I.    <u>BACKGROUND</u>

Plaintiff filed its Complaint in this action on November 18, 2011, alleging that Cisco

infringes upon U.S. Patent No. 5,881,142 (" '142 Patent") (Doc. 1).  The Cisco products accused of

infringing Plaintiff's patent are the SPA9000, SPA400, and SPA3102 ( collectively "the Accused

Products").  *Id.* ¶ 11.

Brandywine is a patent holding company with its principal place of business in Villanova,

Pennsylvania. *Id.* ¶ 2. Although Plaintiff is not registered to do business in Florida, (Doc. 28 at p.6), it claims that "one of Brandywine's owners resides in Florida, and certain documents relating to the patent-in-suit are currently located in Florida, under his control." Doc. 35, p.5; Declaration of Gordon Bremer in Support of Brandywine's Opposition ("Bremer Decl."), Doc. 35-Ex.22, at ¶¶ 1-2, 8. Plaintiff explains that the patent documents were first transferred from the original inventors to Paradyne Corporation, which was at the time based in Florida, and kept documents relating to its patent holdings in Florida. Bremer Decl. ¶¶ 4-6. Since that time, Brandywine has obtained some of Paradyne's patents, including the '142 patent. *Id.* ¶ 7.

Defendant is a California corporation whose principal place of business is in San Jose, California. Declaration of David C. Dotson in Support of Defendant Cisco Systems, Inc.'s Motion to Transfer ("Dotson Decl."), Doc. 28-Ex.1, ¶ 2. Cisco is registered to conduct business in Florida. Declaration of Brian H. VanderZanden in Support of Plaintiff's Opposition ("VanderZanden Decl."), Doc. 35-Ex. 1. ¶ 3A. Cisco is not incorporated in Florida and has no employees in Florida responsible for the design, development, testing, or operation of the Accused Products. Declaration of Andrea Maccato in Support of Defendant Cisco Systems, Inc.'s Motion to Transfer ("Maccato Decl."), Doc. 28-Ex. 2, ¶¶ 6, 11. Also, the majority of Defendant's employees involved with or who have knowledge of the accused products are located in San Jose, California. This includes seven core members of the engineering team, three current or former members of the product management team, the head of the test engineering team, and two members of Defendant's business operations team with access to financial information about the accused products. Maccato Decl. ¶ 7. Moreover, the development efforts for each of the accused products were based out of Cisco's San Jose headquarters. *Id.* ¶¶ 5,6. Additionally, technical, marketing, and financial documents related

to the accused products are located in Cisco's electronic document control system ("EDCS"), accessible from Cisco's San Jose headquarters. *Id.* ¶ 12. The source code for the accused products is stored at Defendant's San Jose facility. *Id.* ¶ 13.

## II.   STANDARD

In patent cases, the law of the Federal Circuit governs. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The Federal Circuit explains that "[i]n reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit." *In re Nissim Corp.*, 316 Fed. App. 991, 992 (Fed. Cir. 2008).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" 28 U.S.C. § 1404(a). The burden is on the movant to establish that the suggested forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989); *Sure Fill & Seal, Inc. v. Platinum Packaging Group, Inc.,* 2010 WL 4342117, at *2 (M.D.Fla 2010). Under Section 1404(a), the district court has discretion to grant or deny a motion to transfer. *In re Ricoh Corp.*, 870 F.2d at 573 n. 5. The Supreme Court has noted that Section 1404(a) "is intended to place discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations omitted). As federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interests of justice. *Suomen Colorize Oy v. Dish Network LLC*, 801 F. Supp. 2d 1334, 1337 (M.D.Fla. 2011); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). The Court explained in *Sterling, M.D.*

*v. Provident Life and Accident Insurance Co.* that in order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show that the balance of the conveniences is strongly in favor of the transfer. *Sterling M.D. v. Provident Life and Accident Insurance Co.*, 519 F. Supp. 2d 1195, 1204 - 06 (M.D. Fla. 2007).

In determining whether to transfer a case, there is no single dispositive factor. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137 (11th Cir. 2005). In determining the propriety of a transfer, the factors to consider include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel.*, 430 F.3d at 1135 n. 1 (11th Cir. 2005); *Watson v. Community Education Centers. Inc.*, 2011 WL 3516150, *4-6 (M.D. Fla. 2011).

## III.   ANALYSIS

### A.  *Venue is proper in the Northern District of California.*

As a preliminary issue, the Court finds that the Plaintiff could have brought this action in the alternative forum. 28 U.S.C. § 1404(a). A "civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, Cisco is a California corporation whose principle place of business is in San Jose, California. Dotson Decl. ¶ 2. As Cisco is the only named Defendant in this suit, this claim for patent infringement could have been properly brought in the Northern District of California. Having determined that the

4

proposed alternative venue is proper, the Court next considers whether transfer is in the convenience of the witnesses and the parties, and whether it serves the interests of justice. *Suomen Colorize Oy v. Dish Network LLC*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011).

**B.  The Plaintiff's choice of forum is not afforded consideration.**

Plaintiff correctly notes that the Eleventh Circuit typically gives strong consideration to the plaintiff's choice of forum. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)("[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."); Doc. 35, p.11.   However, "[i]n patent cases, the preferred forum is the defendant's place of business as that usually constitutes the center of gravity of the alleged patent infringement."  *Proven Winners N. Am., L.L.C. v. Cascade Greenhouse,* 2007 WL 1655387, *2 (M.D. Fla. 2007).  Moreover, "where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper."  *Suomen Colorize Oy*, 801 F. Supp. 2d at 1338 (citing *Cellularvision Tech. & Telecomm., LP v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007)). Here, the Defendant's place of business, the "center of gravity of the alleged patent infringement" is in San Jose, California.  Brandywine has chosen to file this action in the Middle District of Florida, which is clearly not its "home forum."

The Court is not persuaded by Plaintiff's attempt to distinguish these cases from the instant action in order to show that its choice of forum deserves consideration.  Plaintiff argues that whereas the defendant in *Suomen* had no operations relating to the accused technology in Florida, here Plaintiff alleges Defendant sells the accused products in the forum, and admits to having transacted business in Florida.  Answer and affirmative defenses ("Answer"), Doc. 27, ¶ 7.  However, the

Federal Circuit holds that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (ordering district court to transfer action to Northern District of California, where the allegedly infringing products were researched, designed, developed and tested); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (ordering district court to transfer action to the Eastern District of North Carolina, where the accused drug was developed and tested).  In fact, Defendant has sales offices throughout the United States, including in the Northen District of California.  However, Plaintiff has not alleged any connection between this case and Defendant's sales office in the Middle District of Florida.[1]

In response to Defendant's argument that Brandywine has no apparent connection to the Middle District of Florida, Doc. 28 at p.12, Plaintiff argues that it has one potential witness, Gordon Bremer, who has ownership interest in Brandywine and who lives in Florida, and is "still in possession of certain of the patent records for the '142 patent".  Doc. 35, p.10; Bremer Decl. ¶¶ 1, 2 and 8.  Plaintiff also explains that due to recent surgery, it would be difficult for Bremer to travel. *Id.* ¶ 9.  In reply, Defendant accurately notes that Brandywine has provided no indication that Bremer, who is not the inventor of the '142 patent and was not involved in the prosecution of the '142-patent, has any relevant personal knowledge related to the case or any relevant documents other than the publicly-available patent documents.  Doc. 40, p.3.

Additionally, Plaintiff attempts to discount the established proposition that a plaintiff's

---

[1]The Court agrees with Defendant that Plaintiff seemingly conflates the minimum contacts analysis that would be necessary to establish personal jurisdiction with the connection between the patent suit and the chosen forum which is relevant for an analysis of appropriate venue.  Doc. 40, p.2.

choice of forum is entitled minimal deference when it is not Plaintiff's home forum, by arguing that although Brandywine is primarily based in Pennsylvania, it does not have employees, market or sell products in Pennsylvania, and thus its "home forum" is *not* a particularly convenient forum for Brandywine." Doc. 35, p. 12. This argument is unpersuasive. Where, as here, a plaintiff chooses a forum which is clearly not "its home forum," it will be "considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Suomen Colorize Oy*, 801 F. Supp. 2d at 1338.

Defendant clearly lacks connections to the Middle District of Florida that pertain to this case, and Plaintiff also lacks connections to this forum that would support even modest deference to its choice. Given the dearth of relevant contacts of both parties, combined with the fact that this District is not Plaintiff's home forum, the Court will not afford deference to Plaintiff's choice of forum in the Middle District of Florida.

## C. *Convenience of the parties and  witnesses favors transfer.*

The Middle District of Florida "gives great weight to the convenience of the parties and witnesses." *Suomen Colorize Oy*, 801 F. Supp. 2d at 1338 (citing *Am. Aircraft Sales Int'l., Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1352 (M.D.Fla. 1999)). It is well established, as Defendant notes, that the majority of the witnesses in a patent infringement case originate with the defendant, and in this case the Northern District of California will be more convenient to an overwhelming majority, if not all, of the potential witnesses. Doc. 28, p. 6; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Defendant's accused products were developed in the Northern District of California, and the majority of current Cisco employees having relevant knowledge about

the accused products are located there, including seven core members of the engineering team, three current or former members of the product management team, the head of the test engineering team, and two members of Cisco's business operations team with access to financial information for the accused products.   Maccato Decl. ¶¶ 5-7.   Defendant also notes that the Northern District of California is more convenient for potential third party witnesses.   The Defendant explains that the named inventor on the face of the patent lives in San Jose, California, and believes that each of the inventors of '142 patent resides in the Northern District of California.   Doc. 28, p.4; Dotson Decl. ¶¶ 4-10, 13.   Additionally, the law firm for the '142 patent, Haverstock & Owen LLP, is located in the Northern District of California.   Dotson Decl. ¶¶ 11-13.

As neither Plaintiff nor Defendant are located in the Middle District of Florida, and the majority of the evidence in this case will originate from Defendant's California headquarters, the burden and expense for Defendant to transport witnesses to Florida for this litigation render it an inconvenient forum.   Defendant's reliance upon *Response Reward Sys., L.C. v. Meijer, Inc.* is instructive.   Doc. 28, p. 9.   In *Response Reward Sys*, the court considered the effect of venue on each parties' potential witnesses, noting:

> If the case were to remain in Florida, there would be a greater burden to Defendant than to Plaintiff because Defendant would bear the expense of sending many employee-witnesses to the trial.   The expenses would not only include the cost of travel, but also the costs of disrupting its business for the duration of the trial.   On the other hand, the Plaintiff is the only witness that would be required to travel.

*Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002).   Given the nature of the action and fact that neither party is located in this forum, the Court agrees with Cisco that the majority of witnesses would need to travel from California to Florida.

Plaintiff makes two arguments in response.   First, Plaintiff claims it already has one likely

witness, Gordon Bremer, with control of certain documents relating to the '142 patent.   As discussed, Plaintiff has failed to identify Bremer's personal knowledge regarding facts at issue or the nature of the documents he controls, and thus there is no reason to assume that Bremer will be a witness.  Doc. 40, p.3.  Plaintiff has admitted that Bremer is their only connection between this patent action and the Middle District of Florida.  Thus, even if Bremer is called as a witness, his possible inconvenience is outweighed by the majority of potential witnesses located in California.

Second, Plaintiff explains that because it is litigating nine other cases in this Court involving the same asserted patent, the proposed transfer and resulting need to litigate in two forums would be "tremendously inconvenient" for "a small company like Brandywine." Doc. 35, p.8.  Defendant argues that Plaintiff's decision to file twenty-four separate patent cases in this District has no bearing on this venue analysis.  Moreover, Plaintiff's argument that the other cases should be taken into account represents an "end-run" avoidance of the procedures required by the Multidistrict Litigation ("MDL") statute, and is contrary to the spirit of the America Invents Act (AIA), which was enacted on September 16, 2011, two months prior to Plaintiff's filing a Complaint in this action.[2]  Doc. 40, p. 4.   The Court agrees that Brandywine's efficiency concerns regarding its other patent infringement action would be more appropriately addressed under the MDL statute, and Plaintiff has filed no such motion.  28 U.S.C. § 1407(a)- (c) .  Therefore, consideration of the convenience to witnesses and parties favors transfer.

_____

[2] The AIA clarifies that alleged acts of infringement by different products made by different defendants, whose only connection is the asserted patent, do *not* result from a "single transaction or event" justifying joinder pursuant to Federal Rule of Civil Procedure 20.  35 U.S.C. § 299(b).  Defendant argues that a bid to consolidate the nine actions regarding this patent as a single case would have failed, and thus Plaintiff's arguments referring to the other cases, even the locations of the other defendants, is irrelevant to this analysis.

**D.  *Location of the relevant documents and ease of access to proof favors transfer.***

The location of relevant documents and sources of proof also favors transfer to the Northern District of California.  "This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial."  *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D.Fla. 2010).  Defendant is correct that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

First, the patent-in-suit was prosecuted in the Northern District of California, although patent prosecution and assignment documents are publicly-available through the Patent and Trademark Office.  Doc. 28-Ex. 1; Dotson Decl. at ¶¶11-12.  The accused products were developed at Defendant's headquarters in San Jose, and the source code for the accused products is stored on a software management system in Cisco's headquarters.  Maccato Decl. ¶¶ 5-6,13.  Defendant alleges that documents and electronic data related to the design, development, testing, operation, marketing, and sales of the accused products are stored in Defendant's EDCS system, accessible from Defendant's headquarters in the Northern District of California.  *Id.*, at  ¶ 12.  Also, other relevant paper documents or locally stored electronic documents are likely to be located at Defendant's headquarters in San Jose, California.  *Id.*, at ¶¶ 5-7.  In response, Plaintiff maintains that relevant patent documents are in the possession of Gordon Bremer, who has an ownership interest in Brandywine and lives in Florida.  Bremer Decl. ¶¶ 1-2, 8.  Plaintiff also emphasizes the relative unimportance of the physical location of documents in the era of modern technology.  Doc. 35, p.

7; *see Microspherix LLC v. Biocompatibles, Inc.,* 2012 WL 243764 (S.D. Fla. 2012) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant."). Although recognizing that the weight of this factor is minimized given the prevalence of technology, the Court is persuaded that the majority of the relevant documents for a potential trial, particularly those related to the creation and development of the accused products, is located in the Northern District of California. Accordingly, the location of relevant documents and sources of proof moderately favors transfer.

**E. Familiarity with the governing law and relative means of the parties are neutral.**

The Court agrees with both parties that the Northern District of California and the Middle District of Florida are equivalently well versed in the applicable federal law of patents, and thus this factor is neutral. *See* Doc. 28, p. 10; Doc. 35, p. 11.

With respect to the parties' relative means, the Defendant admits that it "may have greater relative means than Brandywine." Doc. 28, p. 10. However, for Brandywine, a company incorporated in Delaware, headquartered in Pennsylvania, with counsel of record in Texas, the Court is not convinced that the financial burden of litigating a case in Florida would be substantially less than the burden posed by litigating in California. Doc. 1, ¶ 2; VanderZanden Decl., p. 3 ¶ 1; Dotson Decl. ¶ 3. Therefore, the Court finds that the familiarity with the applicable law and relative means of the parties are neutral factors.

**F. The locus of operative facts favors transfer.**

The Court finds that the locus of operative facts in this patent infringement action favor transfer to the Northern District of California. The Defendant argues that the developing, testing

11

and marketing of the allegedly infringing products took place in the Northern District of California, where Defendant is headquartered and the accused products are based.  Maccato Decl. ¶¶ 5-7. Indeed, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."  *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  In response, Plaintiff contends that when the tortious conduct, the alleged infringement in this case, leads to harm throughout the nation, the varied locations of the harms prevents the finding of any clear locus of operative facts.  Doc. 35, p.9.  However, the case Plaintiff cites from this District is distinguishable, as the court there found that because the accused products were designed in Michigan and manufactured in Florida, the locus of operative  facts did not "overwhelmingly favor either side."  *Omega Patents, LLC v. Lear Corp.*, 2009 WL 1513392, *3 (M.D.Fla. 2009).  Although Plaintiff alleges that the harm resulting from Defendant's alleged infringement "is felt across the country," Doc. 35 at p.10, the Court finds that there are significant connections between the Northen District of California and the events that gave rise to this suit, and thus this factor weighs in favor of transfer.  *In re Hoffman-La Roche Inc.*, 587 F.3d at 1338.

### G.  Trial efficiency and the interests of justice are neutral.

In considering this factor, "[c]ourts often consider such things as the relative interests of the two forum states in the litigation, relative hardship of the parties, and questions of judicial economy."  *Suomen Colorize Oy*, 801 F. Supp. 2d at 1339.  Here, the Court agrees with the Defendant that it would be more efficient and practical to try this case in the Northern District of California.  As discussed, the majority of likely party and third-party witnesses and relevant documents are located in California, as that is where the accused products were created and developed.  Maccato Dec. at  ¶¶ 7-13.  The Court recognizes, as Plaintiff argues, that "California

witnesses can be deposed in California", and video testimony can be used for third-party witnesses who refuse to testify live at trial.  Doc. 35, p. 13.  Nevertheless, given that both forums have an equivalent interest in protecting their residents from patent infringement, and neither party is based in the Middle District of Florida, trial in California is the more efficient and practical forum.

The Court is not persuaded by Plaintiff's repeated argument that transferring the case will "sever into two groups the ten '142 patent cases now before the Court."  Doc. 35, p. 14.  The fact that plaintiff has many separate cases regarding the same patent is simply not a primary consideration  to the 28 U.S.C. § 1404(a) venue analysis.[3]  In sum, this litigation bears virtually no relationship to the Middle District of Florida, in strong contrast to the Northern District of California, where the accused products were developed and marketed, the Defendant is incorporated and headquartered, and where key documents and likely potential witnesses are located.

## IV.    CONCLUSION

The Court finds that three factors favor transfer, two are neutral, and that the Plaintiff's chosen forum is not afforded deference in this case.  Therefore, the Court will grant Defendant's Motion to Transfer and order that this case be transferred to the Northern District of California.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1.    Defendant Cisco Systems, Inc.'s Motion to Transfer to the Northern District of California (Doc. 28) is **GRANTED.**

2.    This cause is hereby **TRANSFERRED** to the United States District Court for the Northern District of California for all further proceedings.

---

[3] In its Response in Opposition, Brandywine notes that it is "planning to file a motion under local Rule 1.04(c) to consolidate the cases for discovery and claim construction purposes." Doc. 35, p.5.  At present, Plaintiff has not filed such a motion in this action.

3.       The Clerk of the Court is directed  to terminate all pending motions and deadlines

and immediately transfer this cause to the United States District Court for the

Northern District of California.

**DONE AND ORDERED** at Orlando, Florida, on March 26, 2012

Charlene Edwards Honeywell
United States District Judge

COPIES TO:
COUNSEL OF RECORD

14